# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY CAMDEN VICINAGE

| | |
|---|---|
| DEBRA CAPANNA,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Civil No. 17-6926 (RMB)<br><br>**OPINION** |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff Debra Capanna from a denial of social security disability benefits on November 15, 2013. The denial of benefits was upheld by the Administrative Law Judge ("ALJ") on September 21, 2016. [Record of Proceedings, "R.P.", p. 15]. Because the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the final decision of the Commissioner. [Id.]. Plaintiff commenced this civil action seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the Court affirms the decision of the ALJ.

1

I.  **STANDARD OF REVIEW**

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment

or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

II.     **FACTUAL BACKGROUND**

The Court recites only the facts that are necessary to its determination on appeal, which is narrow.

Plaintiff was born on December 21, 1965, and was 39 years old at the alleged onset date. [R.P., p. 30]. She applied for Social Security Disability Benefits on July 27, 2013, alleging an onset of disability of beginning November 1, 2005. [R.P., p. 15]. Plaintiff last met the insured status requirements of the

4

Social Security Act on December 31, 2009. [Id.]. Plaintiff alleged disability due to physical impairments including rheumatoid arthritis and degenerative disc disease, and mental conditions including schizoaffective disorder, generalized anxiety disorder, and depression. [Plaintiff's Brief, "Pl.'s Br.", p. 2].

A disability hearing was held on August 16, 2016. The ALJ heard testimony from the Plaintiff. A Vocational Expert was also present, but did not testify. The ALJ found Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act through the last date insured: December 31, 2009. [R.P., p. 21].

### A. Plaintiff's Relevant Medical History

In August 2006, Plaintiff was treated at Kennedy Hospital for depression/anxiety and suicidal thoughts. At that time, Plaintiff did not seek voluntary hospitalization and was released from the hospital the same day. [Defendant's Opposition Brief "Def.'s Opp'n Br.", p. 3]. Plaintiff began treatment with Dr. Deerfield during that month and treatment consisted of medication and monthly office visits. Dr. Deerfield's notes indicated lapses in treatment spanning three to four months, to more than a year and a half. [Id.]. Plaintiff was diagnosed with Bipolar I and psychosis. It was not until October 2013

where Dr. Deerfield categorized in a letter Plaintiff's psychiatric disorder as severe and disabling. [Pl.'s Br., p. 6].

In February 2014, Dr. Deerfield submitted a Mental Impairment Medical Source Statement (MIMSS). The form is a check-box and fill in the blank type form. Dr. Deerfield indicated on the MIMSS that Plaintiff had extreme limitations in all mental work-related areas, and that these restrictions existed since at least December 31, 2009. [Def.'s Opp'n Br., p. 3].

Plaintiff also complains of physical impairments. In May 2007 Plaintiff underwent an EMG/Nerve Conduction Study for alleged pain in her upper back, neck, and arm. The test results were "normal" and Plaintiff was recommended by Dr. Kovacs to seek evaluation by a rheumatologist in light of her history of fibromyalgia. [R.P., p. 12 and 41]. Further scans indicated mild cervical arthritis, and degenerative changes in the shoulders and knee. [Id].

 **B. Plaintiff's testimony**

At the disability hearing, Plaintiff testified that she had a psychotic episode in 2006 and is "still in that mindset." [R.P., p. 31]. During the 2006 episode, Plaintiff sought treatment from Kennedy Hospital. [Id.]. There, she admitted to abusing Valium and Percocet. [Id.]. During the hearing, Plaintiff testified that she had an addiction but stopped taking

the drugs after the episode in 2006. Plaintiff began seeing Dr. Deerfield after this time. Dr. Deerfield's notes indicated that the Plaintiff would take extra Risperdal to help with her psychosis. [R.P., p. 32].

Plaintiff testified that she cannot control her thoughts and believes her mind is being controlled by someone else. For example, Plaintiff stated that the TV will read her mind and that she has conversations with the TV three to four times a month. [R.P., p. 31]. However, the ALJ stated that he did not find evidence of this in Dr. Deerfield's treatment notes. [R.P., p. 18]. Plaintiff further testified that she suffers from tiredness, drowsiness, memory loss, and feels as if she is in a "fog." [R.P., p. 19].

Additionally, Plaintiff testified that she can't think or answer questions quickly. [Id.] When asked to describe her typical day, Plaintiff responded she would wake up, make breakfast for her daughter and bring her to school, drive to the supermarket on some occasions, and then come home, take medicine, and sit on the couch. [R.P., p. 33]. On good days, Plaintiff stated that she could do light housework, prepare lunch, and pick her daughter up from school. [Id.]

During the hearing, Plaintiff's attorney was interrupted by the ALJ and warned for asking leading questions.[1] Questions asked during Plaintiff's testimony included:

> Q: The medication you take – or you were taking to help you go to sleep, did that make you groggy in the morning?
>
> A: A little bit, yeah . . .
>
> Q: Now, with respect to the side effects from the medications, do you have to sleep during the day?
>
> A: Yes, I do . . .
> Q: Along with not being able to think properly or clearly, are there any problems – or did you have any problems with your memory?
>
> A: My memory is very bad.

[R.P., p. 35-36]. As a result, in his decision the ALJ stated, "[m]uch of the claimant's testimony at the hearing was elicited through very leading questions from the attorney. The undersigned accords little weight to this testimony." [R.P., p. 18].

### III. **<u>ALJ'S DETERMINATION</u>**

The ALJ concluded that "[t]he claimant was not under a disability, as defined in the Social Security Act, at any time

---

[1] The ALJ asked Plaintiff's attorney if he was "going to continue to ask leading questions?" . . . "Yes-or-no question, asking and supplying the conclusion that there was grogginess in the morning when that was not even volunteered as opposed to were there any side effects. Then maybe you could have gotten there." [R.P., p. 35].

8

from November 1, 2005, the alleged onset date, through December 31, 2009, the date last insured." [R.P., p. 21]. Relevant to the issues presented on appeal, the ALJ found that "through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments." [R.P., p. 17].

Furthermore, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of her impairments were not well supported in the medical evidence." [R.P., p. 18]

**IV. ANALYSIS**

   **A. ALJ's Assessment of Plaintiff's Testimony**

Plaintiff argues the ALJ erred in discounting Plaintiff's testimony because it was elicited through leading questions. Plaintiff construes the ALJ's opinion too narrowly. The ALJ did not discredit Plaintiff's testimony outright simply because her attorney asked leading questions. Rather, the ALJ's determination of credibility was influenced by the fact that leading questions were asked. Indeed, as the ALJ noted, he accorded "little weight to this testimony." [R.P., p. 18]. This is certainly permissible, and the ALJ was free to consider

whether or not the Plaintiff's testimony was elicited through leading questions and give whatever weight he deemed appropriate. The record demonstrates that Plaintiff's attorney did, indeed, ask leading questions during the hearing which suggested the answers. For example, Plaintiff was asked, with respect to the side effects from the medications, "do you have to sleep during the day?" Plaintiff responded "Yes, I do." [R.P., p. 32]. Similarly, the Plaintiff was asked about her medication, "did that make you groggy in the morning?" Plaintiff responded, "a little bit, yeah." [R.P., p. 34]. It was after this statement that the ALJ warned Plaintiff's attorney about asking leading questions.

Plaintiff asserts that besides the instance where the ALJ interrupted, "the questions asked were not leading, nor were the anticipated responses to those questions 'yes or no' answers" and that the ALJ "failed to appropriately alert counsel that leading questions were unacceptable." [Pl.'s Br., p. 13-14]. As demonstrated above, this statement is inconsistent with the hearing transcript. There are many instances in the record where Plaintiff's attorney asked leading questions and Plaintiff gave the expected answers of "yes or no.".

Plaintiff cites to the Federal Rules of Evidence and Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000), arguing that the ALJ made a ruling on the admissibility

of evidence and "failed to provide appropriate evidence or reason for dismissing the plaintiff's credible testimony." [Pl.'s Br., p. 14-15]. However, the ALJ did not exclude the evidence and made no evidentiary ruling. Rather, as the factfinder, the ALJ articulated why he afforded less weight to portions of Plaintiff's testimony. In essence, the ALJ explained that he gave less weight to the "testimony" that was really the testimony of Plaintiff's lawyer in the form of leading questions.

Moreover, even if the ALJ did dismiss, "most of Plaintiff's testimony" because counsel "had to use some 'leading' questions to help elicit Plaintiff's testimony," as Plaintiff argues, [Pl.'s Br. p. 12] - which the Court does not find to be the case - the ALJ gave an adequate reason for doing so. The Third Circuit has held, "an ALJ may reject a claimant's subjective testimony if she does not find it credible so long as she explains why she is rejecting the testimony." Hall v. Comm'r of Soc. Sec., 218 F. App'x. 212, 215 (3d Cir. 2007) (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999))[2] In his decision, the ALJ further explained reasons why he did not give Plaintiff's testimony controlling weight, stating:

---

[2] In Hall v. Comm'r of Soc. Sec., 218 F. App'x. 212, 215 (3d Cir. 2007), the Third Circuit found that the ALJ considered Plaintiff's complaints and considered them in light of other evidence in the record. "In doing so, the ALJ concluded that [Plaintiff's] subjective complaints of totally disabling

11

> [T]here is no indication that Dr. Deerfield
> consistently observed decreased concentration,
> muddled thought, impaired memory, inability to
> process information quickly, or inability to learn
> new things quickly, or many of the other very
> serious limitations presented at the hearing. . .
> The claimant's allegations might carry more weight
> were they not largely contradicted by the findings
> in the claimant's own treatment record of few of
> the very serious symptoms alleged at the hearing.

[R.P., 19].

The ALJ properly weighed the evidence in the record and made the decision to afford Plaintiff's testimony "little credence and little weight." [R.P., 18]. Therefore, the ALJ acted within his discretion and did not err in affording less weight to Plaintiff's testimony.

### B. ALJ's Step Two Severity Analysis

Plaintiff next argues that the ALJ erred in resolving the claim at Step Two and that the ALJ should have found Plaintiff's impairments "severe" under 20 C.F.R. § 404.1520(c)(2012).

Under the de minimis standard, the severity prong is satisfied where the applicant shows that he or she suffers more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to do work." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 362 (3d Cir. 2004). See also Newell v.

---

pain and limitations are inconsistent with the totality of the medical evidence." Id.

Comm'r of Soc. Sec., 347 F.3d 541, 549 (3d Cir. 2003)("if the evidence presented by the claimant presents more than a slight abnormality, the step-two requirement of 'severe' is met."). "Slight abnormality" means having a minimal effect on, and not interfering with, the claimant's ability to work. Afandador v. Comm'r of Soc. Sec., 2016 U.S. Dist. LEXIS 69558, at *13 (D.N.J. May 27, 2016). A demonstration of more than a slight abnormality "should focus upon the evidence adduced by the applicant, and if the evidence does not demonstrate that the applicant has more than a slight abnormality, the Step Two requirement of 'severe' is not met." Id. at *14.

With these legal principles in mind, the issue is whether the ALJ'S determination that Plaintiff failed to pass Step Two's severity threshold is supported by substantial evidence. The Court concludes that the ALJ's decision is supported by substantial evidence.

Although using Step Two as grounds for the denial of benefits should be employed with caution and in rare circumstances, this is the type of case Step Two was intended to exclude. Plaintiff cites to McCrea v. Comm'r of Soc. Sec., 370 F.3d 357 (3d Cir. 2004), where the Third Circuit found that substantial evidence did not support the ALJ's failure to find a severe impairment under Step Two. Id. In McCrea, however, claimant's allegations were supported by sufficient record

evidence of impairment. Here, by contrast, the record lacks meaningful support of the severity of Plaintiff's impairment. <u>Kirk v. Comm'r of Soc. Sec.</u>, 65 F. App'x 842 (3d Cir. 2003). Indeed, the ALJ carefully considered and explained in more than two pages of his written decision that Plaintiff's impairments did not amount to severe.

First, as to Plaintiff's physical ailments, the ALJ considered an MRI showing mild degenerative changes in Plaintiff's spine, treatment records for physical complaints, and EMG/nerve conduction studies done for Plaintiff's shoulder pain. [R.P., p. 19]. The ALJ noted limited evidence of follow-up treatment and that "[no] source has opined that the claimant had any functional limitations." [R.P., p. 20].

Furthermore, the ALJ thoroughly reviewed medical records of Plaintiff's mental impairments. The ALJ found that the plaintiff's description of symptoms were "largely contradicted by the findings in the claimant's own treatment record of few of the very serious symptoms alleged at the hearing." [R.P., p. 19]. The ALJ also considered a partial cause of the Plaintiff's "fog" was from opiate and valium usage, and therefore not fully attributable to Plaintiff's medications and psychiatric impairments. [Id.].

In cases such as this one before this Court, the Third Circuit has upheld an ALJ's denial of benefits when the ALJ

14

cited specific instances where the claimant's symptoms were inconsistent with: the objective medical evidence of the record, claimant's testimony to rehabilitation and medication regiment; and claimant's description of daily activities. <u>Hartranft v. Apfel</u>, 181 F.3d 358, 362 (3d Cir. 1999). Similarly in this case, the ALJ considered: the contradictions between Plaintiff's testimony and Dr. Deerfield's treatment notes, the lack of documented limitation by a treating physician, and Plaintiff's testimony regarding her daily routine.

Accordingly, the Court concludes that the ALJ properly applied the Step Two standard, which defines "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 404.1521(b) (2012). Ultimately, while the ALJ stated that the record contained evidence of isolated instances of a medical or physical abnormality, "many of the specific diagnostic imaging and studies have been negative. Thus the claimant does not have a severe impairment or combination of impairments." [R.P., p. 20].

Based on the foregoing analysis by the ALJ in his decision, the Court finds that the ALJ's decision was supported by substantial evidence and the ALJ did not err in resolving Plaintiff's claim at Step Two.

**C. ALJ's Consideration of Medical Evidence**

Plaintiff next asserts that the ALJ "impermissibly substituted his opinion" for those of Dr. Deerfield and the State Agency Psychological Consultant. [A.R., 453]. Plaintiff argues that the ALJ's decision was not supported by substantial evidence because the ALJ improperly gave no weight to the check-box Medical Impairment Medical Source Statement (MIMSS) completed by Dr. Deerfield on February 28, 2014 (Ex. 7f), and instead afforded more weight to the "findings recorded in Dr. Deerfield's treatment notes." [Pl. Br., p. 22].

An ALJ may "reject a treating physician's opinion so long as the ALJ bases his decision on contradictory medical evidence in the record and 'not speculative inferences' or his own 'credibility judgements, speculation or lay opinion.'" Serbouti v. Comm'r of Soc. Sec., 2012 U.S. Dist. LEXIS 109584, at *20 (D.N.J. Aug. 6, 2012). See also Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000); Plummer v. Apfel 186 F.3d 422, 427 (3d Cir. 1999).

The ALJ did not err in disregarding the MIMSS completed by Dr. Deerfield. The Third Circuit has held "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). See Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986); Green v. Schweiker, 749 F.2d 1066, 1071

n.3 (3d Cir. 1984) (citing O'Leary v. Schweiker, 710 F.2d 1334, 1341 (8th Cir. 1982)).

Medical evidence in the record contradicts Dr. Deerfield's severe impairment determination on the MIMSS. As the ALJ explained:

> The check-box medical source . . . was completed many years after the expiration of the claimant's date last insured . . . contains very little in the way of explanatory narrative or reference to any objective evidence or even other subjective evidence. More weight is accorded to the findings recorded in Dr. Deerfield's treatment notes than her opinions expressed on the check-box form. The treatment notes cover a longer period and are more detailed than the check-box opinions. They are recorded at the time of the examination, and not many years after in the context of an application for disability.

[R.P., p. 20-21].

The ALJ clearly explained his decision to discount the MIMSS report and the State Agency Psychological Consultant. Because the medical opinions at issue were contradicted by the evidence in the record, the ALJ properly "weigh[ed] all of the evidence" in making his determination. 20 C.F.R. § 416.927(c)(2). The ALJ considered "(1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by plaintiff and corroborated by others who have observed [her]; and (4) plaintiff's age, educational background and work history." Curtin v. Harris, 508, F. Supp. 791, 793 (D.N.J.

1981); Serbouti v. Comm'r of Soc. Sec., 2012 U.S. Dist. LEXIS 109584, at *16 (D.N.J. Aug. 6, 2012). The Court therefore upholds the ALJ's decision to reject the medical findings from the MIMSS report and the State Agency Psychological Consultant as there was substantial contradictory medical evidence in the record and the ALJ provided sufficient explanation of his conclusion.

**V.     CONCLUSION**

For the reasons expressed above, the ALJ's determination that Plaintiff is not disabled under the Social Security Act will be affirmed. An appropriate Order accompanies this Opinion.

January 23, 2019                    ___s/ Renée Marie Bumb___
                                    RENÉE MARIE BUMB, U.S.D.J.